Court. My name is Kevin O'Brien. I'm with Baker & McKenzie. We represent the plaintiff appellant sued in Committee 8. This case comes before you on summary judgment holding the 942 patent invalid based on obviousness relying on the Komatsu 791 patent. This court reviews the district court's holding de novo without deference to the trial court as to disputed material facts. In this case invalidity needs to be shown by clear influencing evidence and there are genuine issues of material fact as to the scope and content of the prior art. Differences between the claimed invention and the prior art and secondary considerations indicate an obviousness. Now at the core of the district court's error is the statement on page 7 that the container of the 942 patent is the Komatsu container with desiccants in place of an oxygen absorbent material. This statement is incorrect. It grows out of a misunderstanding of the structure of the 942 patent claim and a misunderstanding of the Komatsu patent. Both Komatsu and the 942 are similar in that they have one microporous film joined to a laminate with an inner surface with an inner layer and an outer layer. Beyond that the two patents differ fundamentally. The 942 patent is a desiccant container. It's intended to hold water to carry weight. The district court described this as addressing the issue of container rain which is when cargo ships, when metal containers are shipped in long periods of time they are buried in temperature and humidity conditions. The water collects through the permeable membrane, condenses and is held in the bottom of the container and destroys the property. The 942 had to overcome several disadvantages. The prior desiccant containers had adhesive to form the seals. That made the films expensive. The adhesives had to be heated which slowed down the process and they weren't very good. They leaked. They weren't sufficiently strong. So the 942 patent overcame those challenges, came up unexpectedly with a container product which didn't use adhesive but which formed stronger bonds and the way it did it was by using compatible materials. If I could ask a question at this point. Secondary considerations are always a powerful tool in an unexpected result. This enhanced seal from compatible materials other than just kind of the assertion. How do you prove commercial success and copying and long felt need also? All four of your asserted secondary considerations are assertive but I don't see record evidence to back them up. Certainly. This court's recent decision in Inres Somi is actually a very good example for unexpected results. Not only does the inventor say the unexpected results in the patent but we have three examples. The first two examples use compatible materials and result in bonds. That's in your patent. I understand that. But unexpected results, I'm looking for record evidence other than just the assertion in the patent. And of course the patent could be sufficient if it was some kind of study or a percentage of improvement or a test that was done that revealed unexpected results. But I don't see anything other than or even a declaration of an expert that he examined these and they weren't consistently better. There are two bases for unexpected results. One is what is in the patent. And those are clear and concise and detailed examples. This is not unsupported. These are very specific. They have specific materials and they have specific results. And examples 1, 2, 3. Comparative examples. Are there studies there to show that these examples are unexpected? I see the three studies. The seal strength is in a certain pound per inch and so forth. Yes. There's no additional study. However, I don't have any way of knowing what the seal strength of the prior art was so that I can say, wow, that's a real unexpected result. That's example 3 is the prior art. And that's a seal strength of 2.77 pounds per square inch, which is insufficient and which is to be compared. Yes, the average length of the strength of the seal was 2.77, but it's not compared to a prior art so that I can see an unexpected change in result. Well, Your Honor, that is the prior art. That is the comparative example. Your point, I think, is that for present purposes, what we're talking about, the prior art is incompatible elements and your innovation is to put two compatible elements, i.e. two elements that have relatively consistent melting points. So you say that examples 1 and 2 show significantly higher bonding strength than the use of compatible elements versus 3, which uses incompatible elements Correct. So you're able to eliminate adhesive, reduce cost, and strengthen the bond at the same time. Your Honor, on the issue of copying, there's very clear evidence of copying, and that is the deposition of defendant's expert, Mr. Powers, where this is discussed on 40 and 41 of our main brief. It's also discussed in our reply brief on 26 and 27, and there are excerpts from the container dry product for the purpose of developing a similar product. But we said in an iron grip case in 2005 that merely asserting copying on the basis of the infringing product would automatically confirm a non-obviousness in every instance where there's a potential infringement. You've got to show widespread copying, don't you? Well, they analyzed the product. They didn't just see the product in the market and say, we want something like this. They took the product into their lab, they studied it. The point is, don't you have to have more to show widespread copying to overcome, to show that it was widely accepted in the industry and therefore a non-obviousness? Your Honor, I believe that the in-ray, I'm sorry, advanced display systems certainly is a case that supports this degree of copying is at the very least sufficient to raise an issue of material fact. We are not here after a full bench trial where the district court has considered a secondary consideration. That's one of the main points for vacating and remaining in the present decision is that there's no mention, no mention whatsoever of secondary considerations by the district court in its opinion. So whether or not these secondary considerations are sufficient to prove non-obviousness or indicate non-obviousness, that's just an issue that wasn't addressed. Well, of course, I'm trying to figure out if you put it legitimately into issue. That's what we look for in summary judgment proceedings, issues of fact. And I've got to see if you've supplied enough evidence to create the issue of fact. And if you have, you're right, it goes back. But if you haven't, you may have failed to meet the burden of proof. That's the reason for my inquiry. So the addition are the unexpected results and the copying, which comes out of the defendant's own expert's mouth, Your Honor. If I can just briefly refer to what the Kamatsu patent did, because it's important to understand what compatible versus non-compatible is. Kamatsu, you can study the Kamatsu patent. You will not find compatible, adhesives, strong. The only problem with Kamatsu, moisture, if it gets into the oxygen absorber, creates a slurry that oozes out of the package. It then says at the bottom of Column 1 that this is a waterproof container. And on Column 3, it says it's a water impermeable container. Kamatsu is not interested in a water permeable package. It's interested in an oxygen absorber. Kamatsu is 14 years older than our patent, than the 942 patent. His problem in Kamatsu was he had two thin sheets, and when he heated one side, he heated the other side of the sheets, and they get stuck to the rods, the heating elements, and the bars, and the process would have to go very slow. So what Kamatsu did was he put an outer layer on top. He made a laminate on one side, and he said this outer layer will be at a high temperature, and the film will be at a high temperature, and the inner layer will be at a low temperature. So I'll soften the product out of the machine without sticking to the heating element. Kamatsu, on Column 3, lines 16 through 21, says that the softening point of the inner layer, most preferably, is at least 20 degrees centigrade lower than the film or the outer layer. Kamatsu does not want the film or the outer layer to soften, because if it does, it will stick to the heating element. He wants just to have the inner layer soften. Now that is fundamentally different than the 942 patent. The 942 patent says that the temperatures of the film and the inner layer, they don't have to be precisely the same temperature, but they have to be sufficient to create mixing on a molecular scale and homogeneous crystallization. Neither of those concepts are taught in Kamatsu. Indeed, if you practice Kamatsu, you will not have compatible materials, because you wouldn't get the molecular mixing. Now, I take it in the 942 patent that it is contemplated that at least in one body like the layer 16 can be laminated itself. Layers of the 942. That can be laminated, and therefore you could have the compatibility would be between the inner edge of that 16, that is to say 18, and the inner edge of the already laminated side, which would be 24. Correct. So it is not necessary that 18 be a single film. It can be a laminated. It is not limited to that. That is correct. Although the claim itself says the joinder of a microporous film with a laminated side. But the spec explains that that film could be itself laminated. The key part is that you have molecular mixing between the inner surface and the outer. Which requires compatibility between, I take it, 24 and 18. Correct. Even if 18 is not homogeneous in its composition all the way through the entire width of 16. Correct. And your contention is that that is the problem. And the 942. In other words, you have got to get simple minded about it. You have got two hard sections and you have got a soft section in the middle that you want to get gooey so they stick together. You have got two gooey sections, one on either side and Komatsu only has one gooey section. That is true. That is essentially your point with respect to compatibility? Oh it is. And what flows from it is stronger bonds. No need for adhesive. Unexpected results. Molecular mixing between the two gooey sections is supposed to be more traditional adhesive between a gooey and a less gooey, harder section which produces a weaker bond. Using an adhesive. Correct. Plus Komatsu's instruction that the outer film be at preferably above 20 degrees centigrade. So Komatsu is not bringing you to the 942 patent. What you need to address is that the Komatsu patent at least recites the same materials as you recite. Probably propylene, polyethylene. The district court specifically refers to that. Yes Your Honor, if I may. The 942 patent addresses those in discussing the prior art. The 942 references Tyvek, Seligar, polypropylene, polyethylene. There is nothing new about polyethylene or polypropylene. That is not the point. And the fact that the district court says Komatsu mentions polyethylene and 942 mentions polyethylene therefore they are identical materials. That simply misses the point. I would have expected you to say that polyethylene and polypropylene are very broad categories and you can have incompatible members of those families. Exactly Your Honor. And you require compatibility which is much narrower than just the recitation of a broad category of plastic. Exactly Your Honor. The reference to Tyvek spells that out. In the appendix we have numerous variations just of Tyvek alone which is a subset of the broad category. Thank you Mr. O'Brien. The court will restore Mr. O'Brien's four minutes. Could you give Mr. McGee an additional four minutes should he need to use them? Good morning Your Honor. First two small things. When we were talking about the coating and the bonds I think I'd just like to emphasize and we did put it in the brief. There is nothing in Komatsu that talks about the use of an adhesive. I mean he's comparing strong bonds There is also nothing in Komatsu that talks about compatible polymeric materials. Those compatible polymeric materials are specifically defined then to require a mix on a molecular scale and a consistent softening. Right? I mean one of skill in the art could not define that term any differently could they given the specification. Excuse me if I could respond to that. I think they could define it differently because they could talk about, which Shelly did not do, differentiating between what materials are compatible and what materials are not compatible. They have to mix on a molecular scale and soften consistently because that's the precise definition given in the specification. Right? That's the definition given in the specification but really it's not a definition so much as it is pretty clearly defined. Compatible means that the materials mix on a molecular scale. They should have softening points which are consistent. I mean they crystallize homogeneously and you can't get too much more clear than that can you? That's what it means. Well I think that's more describing the result than teaching how they mix and if you... Well let's at least for the purposes of our argument here let's say that that pretty clearly defines the meaning of the patent and then we go to Komatsu and we see that it specifically teaches different softening points. In fact even in the abstract which is kind of the broadest discussion of the invention it says it defines plastic film having a lower softening point and a higher softening point. They want essentially one softened and gluing to the other whereas the claimed invention requires this molecular mixing compatibility. That seems to be a pretty significant difference because it results in some unexpected stronger bonds. It seals in water instead of just oxygen. So doesn't this all suggest that maybe the district court jumped a little bit too far? Respectfully no judge. I think that with regard to the compatible polymeric materials argument first of all I point out that there's a Powers expert affidavit saying that the limitation of compatible polymeric materials is met by Komatsu paragraph 27 of the appendix 1370. Paragraph what? 27 it's appendix 1370. And the Powers affidavit has an analysis showing that the Komatsu discloses compatible polymeric materials and he says the same materials disclosed in Komatsu are disclosed in Shelly and that is that the inner surface of the laminate and the inner surface of the micropore is filled. But that gets back to the question I just put to Mr. O'Brien that just a broad category of probably propylene or probably ethylene does not make them compatible as specifically defined by the patent. Molecular mixing and softening points homogeneous and so forth. That of course is a fair comment but I would refer you to if you compare examples 1 and 2 in Shelly and example 2 of Komatsu and in Shelly examples 1 and 2 are found at column 7 line 39 to 40 and I'm reading that now and it surely says the inner surface of both layers was compatible as they are both polyethylene materials. And he says the same thing below. He says the inner surfaces of these two layers. Did they soften at the same point? He says they're compatible. Did they soften at the same point? Under Shelly's scheme, Shelly and Komatsu have the same scheme of relative softening points. Meaning different? No, they both, the scheme of softening that's a very important point Judge. Help me out here. Okay, the scheme let me go through it and I have to go through it slowly. The schemes of both Shelly and Komatsu as to relative softening points are the same. The scheme is that the outer film of the laminate has the highest softening point. That's what contacts the heat. Well, but it doesn't melt. The key is it has a higher softening point. It doesn't melt so it doesn't stick to the heat. So now then the next highest softening point is the micro porous film which is on the other side of the laminate and then the third softening point is the inner side of the laminate and that's either the lowest or no more than the same as the micro porous. And let me show you in Shelly What does that mean? No more than the same? No more than the micro porous. So if I'm showing, if you have the Are you trying to tell me, help me with this paragraph in Komatsu that says the difference between the softening point may be 5 degrees but it should be 20 degrees. Right, that's the softening point of sheet one. Sheet one is the, that fits exactly with what I'm, again the conclusion is that they have exactly the same scheme of relative softening points. The scheme is, and then if I can walk through this, I'll tell you what the scheme is and then I'll show you where you can find it in each panel. The scheme is that the outside of the laminate has the highest. That hits the heat bar, doesn't melt. The heat bar is set below that softening point. So you don't get this sticking to the heat bar. Then the next is the micro porous. And then the lowest, either the lowest or no higher than the micro porous is the inner surface, the other part of the laminate. And typically the outer side, the materials are the same. They suggest polyester for the outer side of the laminate and then polypropylene for the inside and then the micro porous can be either polypropylene or polyethylene. If it's polyethylene it's Tyvek, if it's polypropylene it's the Japanese one. So now if you look at Shelley, so that's the scheme that I'm saying is the same with both. Now here's where you're going to find it. In Shelley, column 5, minus 52 to 6. But Tyvek is the comparative example, the prior example, isn't it? It's in both. It's in both as an example. It's in both Kamatsu and Shelley and as an example in the micro porous. But it's the comparative example in the pack that we were examining, isn't it? In the 942 pack. The 942 has suggested, well they talk about Tyvek and that. For the micro porous. And Kamatsu does too. As you I think commented. But this is the prior arc that doesn't work as well because it seals at 2.77 as opposed to 10.21. But those seals that don't work well have adhesive and Kamatsu does not have adhesive. There's not a word about adhesive in Kamatsu. And is there a word about mixing on a molecular scale or softening points which are consistent or crystallizing? Not in those terms, Judge. Just as a district court recognized, just because they don't use those same terms doesn't mean they're not there. Judge, if I could, let me jump a little bit ahead. I'm trying to be responsive as best I can. A person of ordinary is still in the arc. Let me cut to the chase here. So you can help me out if this isn't exactly what you thought. It looks to me as if, and I'm looking now at column 5, lines 42 through about 48 or 49. Shell effect, 942. Column 5, lines 42 through 49. There's a critical aspect, and I think that does seem to be the critical aspect of the composition. Is that the inner surface of the laminate film, that's 24, which is bonded to the inner surface of the must be comprised of materials which are compatible. Now, I don't see the same requirement of compatibility in the Komatsu patent, because there it seems to me the analogous structures are 3 and 1, which are said to have different melting points, and importantly different so that you have a hard coating on the outside and a soft coating on the inside. Tell me why, Paul. With respect, Your Honor, I would call your attention to Komatsu line 16. Which column? Column 3. Let me make sure I hear the rights. Column 3, lines 26 to 29. It says the elements, if you're column 3, lines 26 to 29, the elements are a microporous film or a non-woven fabric sheet, film 3 having a lower softening point than 1, film 4 having a higher softening point than 3. The key element is, going up a few lines, that the difference between the softening point of 1 and 3, maybe above 5, preferably 10, and most preferably 20, it seems to contemplate that there has to be at least a modest up to a considerable difference in the softening points of 1 and 3, which seems to be different from the scheme that is contemplated by Shelley. Okay, let me read you Shelley, which is column 5, starting at line 52. Also, preferably the softening temperature of the uncoated laminate film is lower than or equal to the softening temperature of the inner surface of the uncoated microporous film. Preferably the laminate film is comprised of a laminated film comprising a high melting or softening point material such as polypropylene on the opposite side. They're always higher and lower. They're always at that incompatibility that Judge Bryson and I both seem to be looking at, and I'm not sure I understand why you say they're compatible. Well, as the court has pointed out, the word compatible is not used in Komatsu, but a person of ordinary skill in the art who would see these materials in Komatsu would see what is and maybe you have to look at it more to decide whether they're right, to see that the scheme of relative softening points is the same. The highest is the outer side of the laminate, polyester, hits the heat fire, and the heat fire is set below that softening point. There could be a line 1, 2, 3 in the relative alignment, but that doesn't seem to me to solve or establish equality, as long as Komatsu is not showing virtual equivalence between, again in the Shelly Fig. 1, 24 and 18, and that's what I'm finding missing in your analysis of Komatsu. Okay, I think I understand the question, and I'll do my best to respond to it. What I'm going to say is that a person of ordinary skill in the art, seeing these materials, seeing the scheme in Komatsu of the relative softening points, would know the materials are compatible because he would know the softening points. A person of ordinary skill in the art here would be able to tell very easily the softening points of the materials, and he could pick materials that would act in a predictable way. They would be just softening where they say they're supposed to soften, and that would make them work because then they would heat seal. So maybe Judge Bryson, the missing link is that it comes from the knowledge of a person of ordinary skill in the art who would know the softening points, and if you know the softening points, you can pick the materials. So he's teaching exactly away from what the Shelley patent is teaching us to do. In other words, Komatsu is teaching us, now make sure when you're selecting these materials that are going to meet that you pick one that's going to remain hard while the other softens so that we have essentially one gluing to the other as Judge Bryson discussed with us earlier. Whatever you do, don't let them both get soft at the same time and mix molecularly. I don't agree that you don't let them get soft at the same time because both say they can have the same softening point. The microporous film and the interlaminate film could have the same softening point. If they have the same softening point, they're both soft at the same time. So I respectfully don't agree with that. I think that you have to look more carefully, you have to look at carefully the citations that I gave you with regard to the... By the way, isn't it just a question of fact whether the knowledge of skill in the art would fill in any gap between these two patents? No, because the power says it and there is no expert or otherwise affidavit dealing with validity in opposition to this motion for summary judgment. Nothing, zero, nothing. And powers discuss it. Can you show me again where the Komatsu patent says that layers 1 and 3 have the same softening point? You keep saying that it teaches that, but where does Komatsu say that 1 and 3 have the same softening point? I don't know that it says it has the same. It seems to say that 3 has a lower softening point than film or sheet 1. That seems to be critical to the whole invention of Komatsu. Well, 3 is the inner landing. And it says that it's lower. They always have different softening points in Komatsu, right? Preferably 20 degrees different. Preferably, but maybe 5 degrees centigrade, which is pretty close, I would say. And I don't, this I think also, I would also point to the fact that the, there is no expert proof on the Tsutsumi side saying that this is different. That these materials are incompatible. If I could say, my time is running up, if I could point to one thing which I think is important. Well, I guess I already did. I did tell you about the, if you compare the two examples, although I don't think I finished it. I'll say that very briefly. If you look at examples 1 and 2 in Shelley, which I read, where he says that the inner surface of both layers was compatible as they are both polyethylene materials. And then he says it again. That's where, I think that goes to the definition of compatible too. The inner surface of the two layers are compatible as they are both polyethylene. Now, if you look at example 2 of Komatsu, which is column 4, line 31, it says polyamide film 15 microns thick was dry laminated with a polyethylene film 20 microns thick. The resulting laminated film and polyethylene nonwoven sheet of Tyvek were loaded in a fast four side sealing packing machine in such a manner that the polyethylene film faced inward. That's the exact same example as, Komatsu's example 2 is the exact same example as same construction as 1 and 2 in Shelley. And Shelley uses the words, the inner surface of both layers was compatible. He defines what's compatible. He says the inner surface of both layers was compatible as they are both polyethylene materials. So he says they're compatible because they're both polyethylene. And in example 2 of Komatsu, it teaches the exact same thing. So someone with skill in the art would know, would take a look and I think one of your honors made the comment about, well, polyethylene, polypropylene are broad genuses of plastics and so on. There's no proof. There's no proof saying what's incompatible with polyethylene or polypropylene. There's nothing, nothing on that. I'm hoping my time is up. Thank you. Thank you. Just three quick points. On my direct, I was asked about the Iron Bell case and the effect of that on copying as a secondary consideration. I would just point the court to the opposition's brief on page 43 where they quote extensively from Iron Bell and they say copying requires, and it goes through a series of things, and quote, or, these are all in the alternative or, access to and substantial similarity to the patented product as opposed to the patent. So the deposition testimony that we have is very strong evidence that they were trying to copy our product and make it their product. The second point I just wanted to mention was, your honor asked if Tyvek was used in the comparison example, which it is in the 9-foot-2 patent. It also is used in example 2 as an example within the invention and that's to prove the point. Just by saying Tyvek doesn't tell you anything. You can have Tyvek, first of all it doesn't tell you what grade and there are many, many different types of that type of product and unless you know what it's being joined with and the conditions of it that it's being joined with, you don't know anything about whether it's compatible or not. Thank you. If I can extend your argument a bit, could you address the point that Mr. McGee made at the very end of his argument about comparing the various examples I believe Mr. McGee was comparing example 1 of the 9-foot-2 with example 2 of the 7-9-1. Yes, your honor. If example 2 of Komatsu is to show the Komatsu invention, then it has to be as your honor has pointed out, that the film has a significantly higher softening point than the inner surface of the laminate and there are Tyvek products, there are polyethylene products which run a full range of softening points. It's not that they all have the same point. So the fact that you have one doesn't necessarily mean that you are at the same softening point as another polyethylene product. And we've got the Komatsu teaching that you looked at in column 3 on 16th and 20th, that the film has to be, must be at least 5 degrees and preferably at least 20 degrees higher than the inner layer of the laminate. Would one with skill in the art be able to look at Komatsu and say, I can get to the Shelley invention with my knowledge of skill in the art, I can pick the compatible polyethylenes or polypropylenes? No, no, your honor. Komatsu wouldn't take you there. Komatsu is taking you in a different direction as was explained, where you want that gooey inner surface of the laminate and two firm surfaces surrounding it so that you would naturally... Precisely. Thank you.